| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | **EASTERN DISTRICT OF TEXAS** |

UNITED STEEL, PAPER AND FORESTRY, §
RUBBER, MANUFACTURING, ENERGY, §
ALLIED INDUSTRIAL AND SERVICE §
WORKERS INTERNATIONAL UNION, §
LOCAL 13-423, §
 §
       Plaintiff, §
 §
*versus* §   CIVIL ACTION NO. 1:12-CV-113
 §
VALERO SERVICES, INC., §
 §
       Defendant. §

**MEMORANDUM AND ORDER**

Pending before the court are Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union Local 13-423's ("the Union") and Defendant Valero Services, Inc.'s ("Valero") cross-motions for summary judgment. Both parties seek a determination as to the arbitrability of the timeliness of the Union's notice to arbitrate under the parties' Collective Bargaining Agreement ("CBA"). Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that the Union's motion for summary judgment should be granted and Valero's motion for summary judgment should be denied.

I.    Background

This dispute stems from the termination of Valero employee Kent Miguez ("Miguez") on May 12, 2011. The Union and Valero are parties to a CBA, which was in effect from February 1, 2009, to February 1, 2012. Article XIX of the CBA provides the procedures for settling grievances and the time period to commence arbitration and states that: (i) if an employee's

complaint is not resolved by the employee's supervisor or department head, the Union has fifteen days to file a grievance with management; (ii) management then has fifteen days to render a decision regarding the grievance; (iii) if the Union does not agree with management's decision and wishes to submit the case to an arbitrator, the Union must file its intent to arbitrate with management within fifteen days of receiving the decision.

On July 18, 2011, in accordance with grievance procedures stated in the CBA, the Union challenged the termination of Miguez by filing a written grievance protesting Miguez's discharge. On July 20, 2011, Valero's management denied the Union's grievance. Pursuant to the CBA, the Union had until August 17, 2011, to file its intent to arbitrate, but failed to file its notice until September 2011.[1] Valero refused to submit the case for arbitration due to the Union's untimely filing.

On March 6, 2012, the Union initiated the instant lawsuit requesting this court to compel arbitration of the grievance and related timeliness dispute. On May 14, 2012, the court ordered the parties to submit briefing on the threshold issue relating to whether the court or the arbitrator should decide the arbitrability (timeliness) issue. On June 11, 2012, the parties filed the instant motions. The Union contends that the arbitrator should decide the issue on the grounds that: (i) an arbitrator generally decides issues of procedural arbitrability, such as timeliness; (ii) the CBA provides that a court may only hear issues of substantive arbitrability and not procedural arbitrability; and (iii) the CBA cannot strip jurisdiction from an arbitrator. On the other hand,

---

[1] The parties dispute the actual date the notice was filed. The Union contends that the date of filing was September 9, 2011, while Valero asserts that the date was September 13, 2011. Because the parties agree that the notice of intent to arbitrate was filed after the 15-day time limit set by the CBA, the actual date of filing is immaterial to the outcome of the motion.

Valero argues that the court, rather than an arbitrator, should decide the arbitrability issue because: (i) the CBA provides that a court will hear any issues as to arbitrability of a matter within the CBA; and (ii) an exception exists that allows a court to hear procedural arbitrability issues when the claim is strictly procedural and the claim may bar arbitration altogether. Thus, the issue before this court is not whether the Union filed its intent for arbitration on time. Rather, it is whether, under the CBA, the arbitrability of the Union's grievance should be determined by a court or by an arbitrator.

II.   Analysis

    A.   Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

"A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be

counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Poole*, 691 F.3d at 627; *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454. The moving party, however, need not negate the elements of the nonmovant's case. *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Bayle*, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility.

*Reeves*, 530 U.S. at 150; *Downhole Navigator, LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009); *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith*, 391 F.3d at 624. The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in its favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009).

Nevertheless, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007); *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not

sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *accord RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "[W]here the non-moving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

A party may move for summary judgment without regard to whether the movant is a claimant or a defending party. *See Apache Corp.*, 626 F.3d at 794 (considering cross-motions for summary judgment); *CQ, Inc. v. TXU Mining Co., L.P.*, 565 F.3d 268, 272 (5th Cir. 2009) (same). On cross-motions for summary judgment, the court examines each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005); *accord CareFlite v. Office & Prof'l Emps. Int'l Union, AFL-CIO*, 612 F.3d 314, 318 (5th Cir.

2010); *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). Cross-motions for summary judgment will not, in and of themselves, warrant the granting of summary judgment unless one of the parties is entitled to judgment as a matter of law. *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980); *Bricklayers, Masons, & Plasterers Int'l Union of Am. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). The rationale for this rule is that each party may move for summary judgment using different legal theories that rely upon different sets of material facts. *Bricklayers, Masons, & Plasterers Int'l Union of Am.*, 512 F.2d at 1023. Nonetheless, cross-motions for summary judgment may be probative of the absence of a factual dispute when they reveal a basic agreement concerning what legal theories and material facts are dispositive. *See id.*; *Schlytter v. Baker*, 580 F.2d 848, 849-50 (5th Cir. 1978).

  B. <u>Enforcement of Arbitration Agreements</u>

  The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. "Whether a contract requires arbitration of a given dispute is a matter of contract interpretation and a question of law for the court." *Smith v. Transp. Workers Union of Am.*, 374 F.3d 372, 374 (5th Cir. 2004); *accord Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 353 (5th Cir. 2003), *cert. denied sub nom. State Concern Turkmenneft v. Bridas S.A.P.I.C.*, 541 U.S. 937 (2004).

  Section 4 of the FAA sets forth the rules governing the district court's role in the arbitration process. It provides, in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district

> court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. Once a party petitions the district court to compel arbitration, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4; *see Jureczki v. Banc One Tex., N.A.*, 252 F. Supp. 2d 368, 370 (S.D. Tex.), *aff'd*, 75 F. App'x 272 (5th Cir. 2003). In essence, "[c]ourts are limited to determinations regarding whether a valid agreement to arbitrate exists and the scope and enforcement of the agreement, including the arbitrability of given underlying disputes under the agreement." *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 486 (5th Cir. 2002) (citing *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085-86 (8th Cir. 2001)).

Courts employ a two-step analysis to determine whether a party can be compelled to arbitrate. *Jones v. Halliburton Co.*, 583 F.3d 228, 233 (5th Cir. 2009); *Lemus v. CMH Homes, Inc.*, 798 F. Supp. 2d 853, 857 (S.D. Tex. 2011). First, the court must determine whether the parties agreed to arbitrate the dispute in question. *Jones*, 583 F.3d at 233-34; *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008); *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 293 (5th Cir. 2005); *Lemus*, 798 F. Supp. 2d at 857. If this question is answered in the affirmative, the court then determines whether any federal statute or policy renders the parties' claim non-arbitrable. *Jones*, 583 F.3d at 234; *Sherer*, 548 F.3d at 381; *JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007); *accord Mitsubishi Motors Corp. v. Soler Chrysler-*

*Plymouth*, 473 U.S. 614, 626 (1985).  Because neither party contends that a federal statute or policy prevents arbitration in the instant case, the court limits its analysis to the first step.

When determining whether the parties agreed to arbitrate the dispute in question, the court must decide:  (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement.  *Jones*, 583 F.3d at 234; *Sherer*, 548 F.3d at 381; *Safer*, 422 F.3d at 293.  Once a court determines that a valid agreement exists, the court must resolve any doubts concerning the scope of an arbitration agreement in favor of arbitration.  *Safer*, 422 F.3d at 294; *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004); *see Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 283 (5th Cir. 2007) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 625)).

Here, neither party disputes the existence of a valid agreement to arbitrate or the arbitrability of the substantive issue of Miguez's termination.  Rather, the parties disagree about whether the effect of the untimeliness of Miguez's intent to arbitrate should be decided by the court or the arbitrator.

    C.    <u>Procedural Arbitrability</u>

        1.    <u>General Rule</u>

"Questions of timeliness or whether a party fulfilled the procedural requirements of an arbitration provision are considered questions of procedural arbitrability."  *Perez v. Lemarroy*, 592 F. Supp. 2d 924, 937 (S.D. Tex. 2008); *accord Gen. Warehousemen & Helpers Union v. Albertson's Distribution, Inc.*, 331 F.3d 485, 488 (5th Cir. 2003); *Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co.*, 815 F.2d 338, 341 (5th Cir. 1987); *Sabine Indep*.

*Seagoing Officers Ass'n v. Sabine Towing & Transp. Co.*, 805 F. Supp. 430, 433 (E.D. Tex. 1992), *aff'd*, 68 F.3d 468 (5th Cir. 1995). In the absence of an agreement stating otherwise, questions of procedural arbitrability are generally decided by the arbitrator, not the court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002); *Gen. Warehousemen & Helpers Union*, 331 F.3d at 488; *Perez*, 592 F. Supp. 2d at 937. Indeed, procedural questions "that grow out of an arbitrable dispute are presumptively for an arbitrator to decide." *BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 493 n.9 (5th Cir. 2012); *see Fantastic Sams Franchise Corp. v. FSRO Ass'n Ltd.*, 683 F.3d 18, 25 (1st Cir. 2012). Finally, the timeliness of the notice to arbitrate is an issue of procedural arbitrability. *See Gen. Warehousemen & Helpers Union*, 331 F.3d at 488 ("'Questions of timeliness are ones of procedural, not substantive, arbitrability.'" (quoting *Oil, Chem. & Atomic Workers' Int'l Union*, 815 F.2d at 341)).

Valero acknowledges the general rule that the arbitrator decides issues of procedural arbitrability, but it contends that the parties agreed to submit all questions of arbitrability to the court. The provision of the CBA highlighted by Valero is contained in the last paragraph of Article XX, Section 3 and states: "Any dispute as to the arbitrability of a given matter shall be resolved by a court of competent jurisdiction and not by an arbitrator, unless the parties specifically agree otherwise in writing." Based on this language and because there is no writing stating otherwise, Valero asserts that the CBA mandates the court to decide this issue. In response, the Union argues that the general rule applies under these circumstances because the above-referenced CBA language applies only to substantive arbitrability.

First, reading the sentence in the context of the entire section lends support to the interpretation that the provision refers to issues of substantive arbitrability. When defining the scope of an arbitration agreement, courts apply state rules of contract interpretation. *Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006); *Banc One Acceptance Corp.*, 367 F.3d at 429. "The cardinal rule to be observed in the construction of contracts is to ascertain and give effect, whenever possible, to the intention of the parties, as that intention is revealed by the language used in the agreement." *Lacy v. Ticor Title Ins. Co.*, 794 S.W.2d 781, 786 (Tex. App.—Dallas 1990, writ withdrawn) (citing *Birdwell v. Ferrell*, 746 S.W.2d 338, 339-40 (Tex. App.—Austin 1988, no writ)); *accord In re G.D.H*, 366 S.W.3d 766, 769 (Tex. App.—Amarillo 2012, no pet. h.). When construing a contract, the intention of the parties is to be gathered from the instrument as a whole. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005); *In re G.D.H.*, 366 S.W.3d at 769. The "court is bound to read all parts of a contract together to ascertain the agreement of the parties." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994); *Fawcett, Ltd. v. Idaho N. & Pac. R.R. Co.*, 293 S.W.3d 240, 244 (Tex. App.—Eastland 2009, pet. denied). Each part of the contract should be given full effect. *See Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 296 (5th Cir. 2010); *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996); *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987). The court should "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Italian Cowboys Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011); *accord Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004); *Balandran v.*

11

*Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) (noting that courts must strive to "give meaning to every sentence, clause, and word to avoid rendering any portion inoperative"). "'No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.'" *SAS Inst., Inc.*, 167 S.W.3d at 841 (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (1983)); *accord Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*, 624 F.3d 252, 259 (5th Cir. 2010); *Seagull Energy E & P, Inc.*, 207 S.W.3d at 345. This is merely an application of the long-established rule in Texas that "'[n]o one phrase, sentence or section [of a contract] should be isolated from its setting and considered apart from the other provisions.'" *Forbau*, 876 S.W.2d at 134 (quoting *Guardian Trust Co. v. Bauereisen*, 121 S.W.2d 579, 583 (Tex. 1938)).

In *Palestine Tel. Co. v. Local Union 1506 of Int'l Bhd. of Elec. Workers*, the United States Court of Appeals for the Fifth Circuit held that an agreement containing similar language to the CBA provision regarding the arbitrability of a given matter did not displace the "well settled law" that the arbitrator decides questions of procedure. 379 F.2d 234, 240 (5th Cir. 1967). In that case, the collective bargaining agreement stated, "In the event the Company takes the position that the grievance is not an arbitrable matter, the initial decision as to whether same is or is not arbitrable shall be made by the court having proper jurisdiction, unless both parties by mutual agreement decide to submit the question of arbitrability to the Board of Arbitration." *Id*. Based on this provision, the company asserted that the issue of whether the Union was in procedural default should be decided by the court. *Id*. The court, however, disagreed, holding that the language in the contract did not alter the established rule. *Id*. The court held that the provision

merely restated the law, and that it was not the "parties' intention . . . to extend the usual authority of the Court to include question of procedure." *Id*.

Here, Article XX, Section 3, reads in its entirety as follows:

> Any question on any matter outside of this Agreement shall not be the subject of arbitration. It is specifically understood that the rights of Management which are not limited by the provisions of this Agreement are not the subject of arbitration. The matters not subject to arbitration include, but are not limited to, the following: (1) The use of contractors and (2) the exercise of the Company's right to layoff after notice and the consequent right of either party to terminate as provided in the last paragraph of Stipulation No. 28 of even date herewith.
> Any dispute as to the arbitrability of a given matter shall be resolved by a court of competent jurisdiction and not by an arbitrator, unless the parties specifically agree otherwise in writing.

The purpose of the section is to assign the resolution of any issues as to the arbitrability of "matters" to the court. The paragraph lists an example of matters excluded from arbitration, including the use of contractors or the exercise of the company's right to layoff after notice, which are issues of substantive arbitrability. The final sentence reaffirms the intent for the court to determine which matters are to be decided by the arbitrator if a dispute arises. This language is very similar to the provision in *Palestine Tel. Co.* Although the CBA in the instant case uses the word "matter" rather than "grievance," the court finds that, in the context of the section, this language merely grants the court the ability to determine issues of substantive arbitrability in accordance with settled jurisprudence.

Second, although timeliness is an issue of "arbitrability," as Valero notes, and questions of arbitrability are typically for a court to decide, the United States Supreme Court "has found the phrase 'question of arbitrability' *not* applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter." *Howsam*, 537 U.S. at 84 (referring to questions of procedural arbitrability) (italics in original). "[P]rocedural

disagreements [are to be regarded] not as separate disputes but as aspects of the dispute which called the grievance procedures into play." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 559 (1964). Under these circumstances, where it is clear that the underlying dispute of Miguez's discharge is subject to arbitration, the related question of timeliness is more appropriately before the arbitrator.

Given the federal policy favoring arbitration and well-established case law holding that questions of procedural arbitrability are presumptively for an arbitrator to decide, the court finds that Section 3 does not require the issue of whether there was a procedural default to be decided by the court. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) ("'[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'" (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford*, 489 U.S. 468, 476 (1989)).

    2.  <u>Exception to General Rule</u>

The general rule, however, has one exception: a court may deny arbitration on procedural grounds when the procedural provision in question operates to bar arbitration altogether. *Gen. Warehousemen & Helpers Union*, 331 F.3d at 488; *Perez*, 592 F. Supp. 2d at 937. In other words, "a court will not order arbitration if 'no rational mind' could question that the parties intended for a procedural provision to preclude arbitration and that the breach of the procedural requirement was clear." *Oil, Chem. & Atomic Workers' Int'l Union*, 815 F.2d at 342 (quoting *Rochester Tel. Corp. v. Commc'n Workers of Am.*, 340 F.2d 237, 239 (2d Cir. 1965)); *accord Gen. Warehousemen & Helpers Union*, 331 F.3d at 488. "[S]uch cases are likely to be rare

indeed." *John Wiley & Sons, Inc.*, 376 U.S. at 558; *Gen. Warehousemen & Helpers Union*, 331 F.3d at 488; *Perez*, 592 F. Supp. 2d at 937.

Valero maintains that the Union's failure to file its intent to arbitrate on time operates as a complete bar to arbitration. With regard to the timing provisions, the CBA states, "intention to arbitrate must be given within fifteen (15) days following date of receipt of the Management's decision" and that the employee "must process his case at every step within the time limits set out [by the CBA]." In *Sabine Indep. Seagoing Officers Ass'n*, the court held that although the language in the CBA "contemplates favoring one party over the other party who violates the time limitations," it did not expressly preclude or bar arbitration. 805 F. Supp. at 435. Similarly, in *Chauffeurs, Teamsters & Helpers Local Union No. 414 v. Leath Furniture, LLC*, the court found that the CBA did not contain language specifically precluding arbitration if the timing provisions were not satisfied. No. 1:03-CV-307, 2004 WL 2964420, at *5 (N.D. Ind. Nov. 22, 2004). In that case, the CBA provided that an untimely grievance "shall not be entitled to consideration." *Id.* at *2. The court opined that this language "suggest[s] only a time limitation and a process to be followed" and does "not provide for a substantive exclusion of a particular type of grievance explicitly declared not arbitrable." *Id.* at *5. Here, the language in the CBA cited by Valero is similar to the language in *Leath Furniture* and *Sabine Towing*. Accordingly, the timeliness provision in Valero and the Union's CBA does not necessarily preclude arbitration.

Moreover, the court finds that a definitive breach of the procedural requirement has not been established. Relying on the affidavit of Robert Hollis, the Chairman of the Valero Workers' Committee during the times material to this case, the Union asserts that extenuating circumstances existed that relieved it from complying with the procedure and that Valero's past practices of

15

allowing the filing of late grievances resulted in a relaxation of the timeliness requirement. Furthermore, Valero does not attempt to controvert the affidavit by producing any evidence that the company strictly adhered to CBA timelines. With undisputed summary judgment evidence revealing an inconsistency surrounding the application of the procedural provisions of the CBA, the court cannot hold that the delayed notice to arbitrate bars arbitration altogether. *See Gen. Warehousemen & Helpers Union*, 331 F.3d at 488; *Oil, Chem. & Atomic Workers' Int'l Union*, 815 F.2d at 342 (holding that there was a legitimate dispute as to the Union's compliance with procedural requirements when the Union stated that it attempted timely to demand arbitration but the company did not have a representative available to receive the demand). In other words, a rational mind could conclude that Valero's past practices excused the untimely notice under certain circumstances. Finally, if the court were to follow Valero's approach and attempt to determine whether the untimely filing barred arbitration, it would result in a delay of the merits of the grievance and "'eliminate the prospect of a speedy arbitrated settlement of the dispute, to the disadvantage of the parties . . . and contrary to the aims of the national labor party.'" *Int'l Ass'n of Machinists & Aerospace Workers v. Indresco, Inc.*, 892 F. Supp. 917, 922 (S.D. Tex. 1995) (quoting *John Wiley & Sons, Inc.*, 376 U.S. 558). Furthermore, "'it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play.'" *Id.* (quoting *John Wiley & Sons, Inc.*, 376 U.S. 558).

    D.    <u>Attorneys' Fees</u>

The Union requests its attorneys' fees associated with the motion to compel arbitration on the basis that Valero acted frivolously or in bad faith in refusing to arbitrate the dispute. In

support of its request, the Union cites to a case awarding attorneys' fees where the facts presented a "classic" procedural question. *See Local 285, Serv. Emps. Int'l Union v. Nonotuck Res. Assocs., Inc.*, 64 F.3d 735, 739 (1st Cir. 1995). Although the law is established, this case presents a different and more difficult question: whether the CBA, as written, overrides the established principles of law. The court finds that Valero's challenge was not frivolous under these circumstances and, thus, attorneys' fees are unwarranted.

III.   Conclusion

Accordingly, the Union's Motion for Summary Judgment is GRANTED, and Valero's Motion for Summary Judgment is DENIED. Based on this grant of summary judgment, it is ordered that the parties submit the issue of procedural arbitrability to an arbitrator.

SIGNED at Sherman, Texas, this 13th day of February, 2013.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE